IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Gregory A. Minette,                                             Case No: 2:15-cv-3063

        Petitioner,                                                    Judge Graham

v.

Robin E. Minette,

        Respondent.

<u>Opinion and Order</u>

      Petitioner Gregory A. Minette brings this action under the Hague Convention on the Civil Aspects of International Child Abduction, as implemented by the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001-9011.  Petitioner alleges that respondent Robin E. Minette has wrongfully retained their minor children in Ohio.  Pursuant to § 9003(a) of ICARA, this court has jurisdiction of actions arising under the Convention.

      The matter is before the court on respondent's motion to stay the federal court proceeding under the *Younger* abstention doctrine.  For the reasons stated below, the motion to stay is granted.

**I.       The Federal Proceeding**

      Petitioner filed a verified petition under the Hague Convention in this court on December 8, 2015.  Mr. Minette alleges that he serves in the United States Air Force and began residing in Italy with his family in July 2013.  He married respondent in 2009 in Maryland.  They have a son born in May 2012 in the United States and a daughter born in April 2014 in Italy.

      On May 28, 2015, Mrs. Minette and the children traveled to Ohio to visit family.  Mr. Minette was not able to accompany them to Ohio, but he did not object to them making the trip.  Mrs. Minette and the children were scheduled to return to Italy on July 4, 2015.  On June 29, Mrs. Minette informed Mr. Minette by telephone that she and the children would not be returning to Italy.  Mrs. Minette and the children have been residing in Lewis Center, Ohio.

      The petition asserts that Italy is the place of the children's habitual residence and that Mr. Minette was exercising his custodial rights under Italian law at the time Mrs. Minette decided not to return with the children to Italy.  The petition further asserts that the mother's retention of the

children in the United States is wrongful under the Hague Convention and ICARA. The petition requests an order directing the return of the children to their residence in Italy.

The court conducted two conferences with the parties shortly after the petition was filed. Respondent notified the court that she would maintain that a legal basis exists for the court to stay the case in deference to a state court proceeding between the parties. Respondent filed a motion to stay on January 4, 2016, and the issue became ripe on January 27, 2016.

## II. The Hague Convention

The United States and Italy are both signatories to the Hague Convention on the Civil Aspects of International Child Abduction. *See* Status Table, Hague Conference (available at https://www.hcch.net/en/instruments/status-charts). The Convention seeks to protect children from the harmful effects of parental kidnapping by depriving the abductor's actions of "any practical or juridical consequences," in that it eliminates a "primary motivation" for the abduction – obtaining an advantage in custody proceedings by commencing them in another country. *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001) (internal quotation marks omitted); *see also* Hague Convention, Oct. 25, 1980 preamble. Article 12 of the Convention provides that when a child is "wrongfully removed or retained," judicial or administrative authorities in the nation where the child is physically located "shall order the return of the child forthwith." Hague Convention, art. 12.

ICARA defines and allocates burdens of proof for claims and defenses under the Convention. ICARA requires that a petitioner establish that the child whose return is sought has been "wrongfully removed or retained within the meaning of the Convention" by proving by a preponderance of the evidence that: (i) the child was a habitual resident of the petitioner's country of residence at the time respondent removed the child to, or retained the child in, the United States; (ii) the removal or retention was in breach of petitioner's custody rights under the law of the country of petitioner's residence, and (iii) petitioner had been exercising those custody rights at the time of removal or retention. *See* 22 U.S.C. § 9003(e)(1); *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001); Hague Convention, art. 3.

A respondent opposing the return of a child may prevail if she establishes by clear and convincing evidence that: (i) there is a grave risk that returning the child to petitioner's country of residence would expose the child to physical or psychological harm or otherwise place him in an intolerable situation or (ii) the return of the child would not be permitted by the fundamental principles of the United States "relating to the protection of human rights and fundamental freedoms." 22 U.S.C. § 9003(e)(2)(A); Hague Convention, art. 13b, 20. A respondent may

2

alternatively prevail by establishing by a preponderance of the evidence that: (i) petitioner was not exercising his custody rights at the time of removal or retention or (ii) the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of his views. 22 U.S.C. § 9003(e)(2)(B); Hague Convention, art. 13a.

ICARA provides state and federal courts with concurrent jurisdiction over claims brought under the Convention. 22 U.S.C. § 9003(a). ICARA's full faith and credit provision requires federal courts to give full faith and credit to a state court's final adjudication of a Hague Convention claim. *Id.*, § 9003(g).

It is not uncommon for divorce and child custody proceedings to be pending at the same time a Hague Convention petition is filed. Article 16 of the Convention provides that "until it has been determined that the child is not to be returned under the Convention," the nation to which the child has been removed "shall not decide on the merits of rights of custody." Hague Convention, art. 16. Under Article 17, "[t]he sole fact that a decision relating to custody has been given in or is entitled to recognition in the [country to which the child has been removed] shall not be a ground for refusing to return a child under this Convention . . . ." *Id.*, art. 17.

The scope of a court's inquiry under the Convention is limited to the merits of the claim for wrongful removal or retention. *See Miller*, 240 F.3d at 398. Thus, the merits of any underlying custody dispute are not at issue in a Hague proceeding. *See* 22 U.S.C. § 9001(b)(4); Hague Convention, art. 19.

### III. The State Court Proceeding

On September 2, 2015, the father filed a complaint for divorce in the Delaware County Court of Common Pleas. The father's divorce complaint did not expressly assert a Hague Convention claim, but it contained allegations sounding in the Convention, including that Italy is place of the children's "habitual residence" and that the children had never lived in Ohio until the "Mother's wrongful removal" of them. *See* Sept. 2, 2015 Divorce Compl., ¶¶ 7,8. The prayer for relief demanded that "Defendant be ordered to return the minor children to the place of their habitual residence in Francenigo, Italy forthwith." *Id.*, Prayer for Relief II.

Soon after filing the divorce complaint, the father moved for an order restraining the mother from refusing to allow the return of the children to their alleged habitual residence in Italy. In the motion, the father directly relied on his alleged rights under the Hague Convention and ICARA. He expressly argued that the mother's retention of the children in Ohio was "wrongful" under Article 3

3

of the Convention[1] because "Italy should be determined to be the habitual residence of both of the minor children" and because the father was exercising his custodial rights under Italian law at the time of their removal.  *See* Sept. 21, 2015 Mot. for Issuance of Order Restraining Def., p. 2.  Noting that the "objective" of the Convention is "to secure the prompt return of children who have been wrongfully removed," the motion then stated, "Plaintiff could file a separate action in federal court . . . but for purposes of judicial economy and to expedite the return of the minor children to their habitual residence, Plaintiff is requesting the Court to grant [orders] allowing him to return the minor children to their habitual residence and restraining the Defendant from interfering."  *Id.*, p. 3

A magistrate judge for the state court characterized the father's motion for a restraining order as a "motion pursuant to the Hague Convention . . . and . . . ICARA."  Sept. 25, 2015 Magistrate's Order, pp. 1-2.  The magistrate noted the concurrent jurisdiction of state and federal courts to hear Hague petitions, recited the elements that must be satisfied to obtain relief and found that there was a lack of evidence concerning the elements.  *See id.*, pp. 2-3.  The magistrate held that "Plaintiff has failed to establish, by a preponderance of the evidence, that the remedies pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act ('ICARA') should be invoked by an *ex-parte* order."[2]  *Id.*, p. 4. The magistrate then scheduled the matter for an evidentiary hearing and requested, pursuant to Article 15 of the Convention, that the father "obtain an advisory opinion from the country of alleged habitual

---

[1] Article 3 provides,

> The removal or the retention of a child is to be considered wrongful where -
>
> a)   it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b)   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
>
> The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

[2]  It is not apparent from the record why the magistrate treated the father's motion for a restraining order as an *ex parte* matter, as the motion did not request *ex parte* relief and a certificate of service accompanied the motion.  The record does indicate, however, that the September 25, 2015 order was issued before the mother submitted her response to the motion.

4

residence advising whether the removal or retention of the children is wrongful under the laws of Italy." [3]  *Id.*

On October 2, 2015, the mother filed a motion to dismiss the father's motion for a restraining order.  The mother's motion argued that the father should not be allowed to seek relief under the Hague Convention because the divorce complaint did not expressly invoke the Convention.  *See* Oct. 2, 2015 Def.'s Mot. to Dismiss Pl.'s Mot. for a Restraining Order, p. 4.

The magistrate conducted an evidentiary hearing on October 6, 2015 and issued an order on the next day.[4]  In addressing the pending motions, the magistrate directed her analysis to Ohio law regarding temporary orders for "support, maintenance, and allocation of parental rights and responsibilities for the care of children during the pendency of an action for divorce."  *See* Oct. 7, 2015 Magistrate's Order, p. 2 (analyzing Ohio R. of Civ. P. 75(N)).  The magistrate noted that the father had sought the return of the children pursuant to the Hague Convention and ICARA, but she declined to address the request: "This however, is not a Hague Convention proceeding, it is a proceeding upon a divorce complaint."  *Id.*, p. 3.  The magistrate did not elaborate on her statement about the scope of the proceeding.  Even so, the magistrate did find, "There is no evidence that the children's removal from Italy by Defendant is unlawful.  Nor is there any evidence that the children's retention in Ohio by Defendant is unlawful."  *Id.*  The magistrate's order restrained the mother from removing the children from Ohio and designated the mother as the temporary custodial parent.

The father moved under Ohio Rule of Civil Procedure 53(D)(2)(b) to set aside the magistrate's October 7, 2015 order.  The father argued that the magistrate committed several errors.  He contended that the magistrate's grant of temporary custodial rights violated Article 16 of the Convention.  *See* Oct. 16, 2015 Pl.'s Mot. to Set Aside Magistrate's Order, p. 3.  He further

---

[3]  Article 15 provides,

> The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State.  The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

[4]  A transcript of the October 6, 2015 evidentiary hearing is not on the record of this court or the state court.  The magistrate's October 7, 2015 order recites that the father testified at the hearing and that both sides submitted evidence.

maintained that the magistrate erred in finding that there was no evidence that the children's retention in Ohio was unlawful and erred in not finding from the evidence that Italy was their place of habitual residence. *Id.*, pp. 3-5. The father also repeated his earlier argument that he was exercising his custody rights under Italian law at the time of removal. *Id.*, p. 5. The father then argued that the state court had a duty under the Convention to return the children to Italy: "[T]he Court has a duty to return the minor children to their habitual residence of Italy when the factors under the Convention (rights of custody, habitual residence and wrongful retention) have been established, [and] these factors have been [established] pursuant to all [of the] proceeding paragraphs of this Motion." *Id.*, p. 6. The father's motion to set aside concluded with a request that the court order "the return of the minor children to their habitual residence of Italy." *Id.* The mother responded to the motion to set aside by arguing that the proceeding should not be treated as one under the Hague Convention. *See* Oct. 28, 2015 Def.'s Mem. Contra Pl.'s Mot. to Set Aside.

The magistrate scheduled a status conference for December 14, 2015. This federal action was filed on December 8, 2015. The state court continued its status conference until January 20, 2016. On January 8, 2016, the father moved the state court to stay its proceeding pending a resolution of this federal action. On January 15, 2016, the magistrate issued an order requiring the father to pay spousal support, allocating financial obligations (loans, credit card debt, insurance), and continuing the January 20, 2016 status conference until April 18, 2016.

The record before this court indicates that the state court has not yet ruled on the father's motion to set aside the magistrate's October 7, 2015 order. The record does not indicate whether the father complied with the magistrate's September 25, 2015 order directing him to obtain an advisory opinion from the judicial or administrative authorities in Italy as to whether the removal or retention of the children is wrongful under Italian law.

**IV.    Abstention**

### A.    The *Younger* Doctrine

The pendency of a state court proceeding generally does not justify a federal court declining to exercise jurisdiction established by Congress. *See McClellan v. Carland*, 217 U.S. 268, 281-82 (1910). A federal court may abstain from exercising its jurisdiction only in "exceptional" circumstances. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'") (quoting *Colorado River*, 424 U.S. at 817).

The Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), articulated one exception to the rule. The *Younger* doctrine permits abstention by a federal court when the exercise of federal jurisdiction would disrupt or interfere with ongoing state criminal proceedings. The doctrine has since been extended to civil proceedings, in limited circumstances, and is grounded in principles of equity, comity, and federalism. *See Moore v. Sims*, 442 U.S. 415 (1979); *Sprint Commc'ns, Inc. v. Jacobs*, __ U.S. __, 134 S. Ct. 584, 588 (2013).

The Court recently restated the *Younger* doctrine, emphasizing the narrow circumstances in which it is available.

> *Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, *see Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." [*New Orleans Public Service, Inc. v. Council of City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 368, 109 S.Ct. 2506 (1989)].
>
> Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI*, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.*, at 367-368, 109 S.Ct. 2506. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).

*Sprint*, 134 S. Ct. at 588.

The Court in *Sprint* set aside the traditional test for applying *Younger*, which required three conditions (the "*Middlesex* conditions") to be satisfied. *See, e.g., Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990) (requiring (1) an ongoing state judicial proceeding, (2) which implicates important state interests and (3) provides an adequate opportunity to raise the federal claim) (citing *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

> Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. *See* Tr. of Oral Arg. 35–36.

7

> That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting *Colorado River*, 424 U.S., at 813, 96 S.Ct. 1236). In short, to guide other federal courts, we today clarify and affirm that *Younger* extends to the three "exceptional circumstances" identified in *NOPSI*, but no further.

*Sprint*, 134 S. Ct. at 593-94. Thus, the *Middlesex* conditions are "not dispositive" and instead are "*additional* factors appropriately considered by the federal court before invoking *Younger*." *Id.*, 134 S. Ct. at 593 (emphasis in original).

### B. Discussion

The situation in state court can be summarized as follows. Short of expressly asserting a Hague Convention claim in his divorce complaint, the federal petitioner has done nearly all he could to seek Hague relief from the state court. He asserted in state court that the children's "habitual residence" is Italy, that he was "exercising" his custody rights under Italian law at the time of the children's retention in the United States and that the mother's retention of the children is "wrongful," as those terms are used in the Convention. He submitted evidence to the state court in support of his position and asked the state court to order the return of the children to Italy under the Convention. The state magistrate judge, while initially handling the matter as presenting a Hague claim, later determined that the divorce action was "not a Hague proceeding." Even so, after having conducted an evidentiary hearing, she ruled that there was no evidence to establish that the mother's removal or retention of the children was unlawful. The father moved to set aside the magistrate's order, and the motion remains pending before the state court.

The fact pattern presented here appears to be unusual, at least in this court's review of the case law, which largely predates *Sprint*. In a pre-*Sprint* case, the Third Circuit identified two guideposts for *Younger* abstention in Hague Convention cases:

> It is clear that if the state proceeding is one in which the petitioner has raised, litigated and been given a ruling on the Hague Convention claims, any subsequent ruling by the federal court on these same issues would constitute interference. It seems equally clear that, if the state court in a custody proceeding does not have a Hague Convention claim before it, an adjudication of such a claim by the federal court would not constitute interference.

*Yang v. Tsui*, 416 F.3d 199, 203 (3d Cir. 2005). *Yang* fit squarely in the second category, as the "parties agree[d] that Yang [had] not raised the Hague Convention in state court." *Id.* at 204; *see also Biel v. Bekmukhamedova*, 964 F. Supp. 2d 631, 635 (E.D. La. 2013) ("Because there is no Hague

8

Convention claim pending in state court, the exercise of federal jurisdiction would not accomplish the kind of interference that *Younger* and its progeny sought to prevent."); *Hazbun Escaf v. Rodriquez*, 191 F.Supp.2d 685, 692-93 (E.D. Va. 2002) (same). *Yang*'s holding that a federal court should not abstain when a Hague claim is not raised in state court certainly survives *Sprint*, but the facts of the case at hand are different, as the father has raised a Hague claim in state court.

The first category identified in *Yang* concerns cases where a Hague claim has been raised, litigated and "been given a ruling" in state court. The Third Circuit did not define a "ruling." If a state court enters judgment on a Hague claim, federal courts must give full faith and credit to the state court's judgment. *See* 22 U.S.C. § 9003(a). For a ruling short of a judgment, *Sprint* now provides that a federal court should abstain under *Younger* only if the civil proceeding in state court "implicate[s] a State's interest in enforcing the orders and judgments of its courts" or "involves "certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 134 S. Ct. at 588.

The Court in *NOPSI* cited two examples of where such a state interest in performing judicial functions was implicated – a civil contempt order and a requirement for the posting of bond pending appeal. *See NOPSI*, 491 U.S. at 368 (citing *Juidice v. Vail*, 430 U.S. 327 (1977) and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)).

In *Juidice*, plaintiffs filed a constitutional challenge in federal court to the contempt proceeding to which they were subject in state court. The federal district court enjoined the contempt proceeding, but the Supreme Court held that the federal district court should have abstained from interfering with the contempt proceeding. It relied on "the notion of comity, that is, a proper respect for state functions . . . and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." 430 U.S. at 334 (internal quotation marks omitted).

> These principles apply to a case in which the State's contempt process is involved. A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws, *Younger, supra*, or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in *Huffman* [*v. Pursue, Ltd.*, 420 U.S. 592 (1975)]. But we think it is of sufficiently great import to require application of the principles of those cases. The contempt power lies at the core of the administration of a State's judicial system, *cf. Ketchum v. Edwards*, 153 N.Y. 534, 539, 47 N.E. 918, 920 (1897). . . . [F]ederal-court interference with the State's contempt process is "an offense to the State's interest . . . likely to be every bit as great as it would be were this a criminal proceeding."

9

> *Huffman, supra*, 420 U.S. at 604, 95 S.Ct. at 1208.  Moreover, such interference with the contempt process not only "unduly interfere[s] with the legitimate activities of the Stat[e]," *Younger, supra*, 401 U.S., at 44, 91 S.Ct., at 750, but also "can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" *Huffman, supra*, 420 U.S., at 604, 95 S.Ct., at 1208.

*Id.* at 335-36 (footnotes omitted).

In *Pennzoil*, the Court followed *Juidice* in holding that *Younger* abstention applied where the exercise of federal jurisdiction would interfere with a state court's proceeding concerning the requirement of the posting of bond pending appeal.  After a state court jury awarded monetary damages to Pennzoil, but before the state court entered judgment, Texaco filed suit in federal court challenging the constitutionality of a state law allowing a judgment creditor to secure a lien on the judgment debtor's property unless the debtor filed a supersedeas bond.  The federal court granted injunctive relief, but the Court held that the federal district court's exercise of jurisdiction represented an "unprecedented intrusion into the Texas judicial system." *Pennzoil*, 481 U.S. at 10.

> This Court repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems.
>
> . . .
>
> The reasoning of *Juidice* controls here.  That case rests on the importance to the States of enforcing the orders and judgments of their courts.  There is little difference between the State's interest in forcing persons to transfer property in response to a court's judgment and in forcing persons to respond to the court's process on pain of contempt.  Both *Juidice* and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts.  Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained.  So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand.

*Id.* at 12-14 (footnotes omitted).

Recognizing that *Younger* abstention is reserved for exceptional circumstances, this court finds that abstention is warranted in the unusual facts of this case.  For the court to proceed on the Hague petition would unduly interfere with the state court's ability to proceed with its review of the magistrate's order.  The magistrate issued several rulings either directly or indirectly relating to the father's Hague claim and rights under the Convention: a provisional ruling that the father "failed to establish, by a preponderance of the evidence, that the remedies pursuant to the Hague Convention . . . and [ICARA] should be invoked by an *ex-parte* order"; a determination that the divorce action was

not a Hague Convention proceeding; a finding that there was no evidence that the children's removal from Italy was unlawful; a finding that there was no evidence that the children's retention in Ohio was unlawful; and an award of temporary custody rights to the mother.

A state's interest in compelling compliance with the judgments of its courts, as in *Juidice* and *Pennzoil*, may be more substantial than its interest in reviewing the orders of its magistrates. But the matter before the state court carries important implications for that court's ability to perform its judicial functions, not the least of which is its authority and duty to review the rulings of its magistrate judge. Ohio law authorizes magistrate judges to "assist courts of record" and "regulate all proceedings," with the goal of furthering the efficient function of the court. Ohio R. Civ. P. 53(C)(1),(2). The state court has the authority to review the magistrate's order and set aside any portion that is found to be in error. *See* Ohio R. Civ. P. 53(D)(2)(b); Delaware Cnty. Ct. Domestic Relations R. 9; *Cf. Dummond v. Drummond*, No. 02AP-700, 2003 WL 257506, at *3 (Ohio Ct. App. Feb. 6, 2003) (holding that a state court has a "mandatory duty" to resolve objections to a magistrate's report). Because the federal Hague petition raises the same issues that were put before the magistrate, this court's exercise of jurisdiction would intrude upon the state court's power to review the magistrate's rulings – a power that "stands in aid" of its judicial authority under Ohio law. *See Juidice*, 430 U.S. at 336 n.12 (noting that the contempt power "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory); *see also Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 70 (1st Cir. 2005) (characterizing *Juidice* and *Pennzoil* as examples of where the exercise of federal jurisdiction would intrude upon "the fundamental workings of the state's judicial system").

The posture of the state court action also implicates the court's ability to determine the scope of the proceeding before it. The magistrate initially determined that the proceeding included a Hague claim, but she later held otherwise. The motion to set aside (and the brief filed in opposition to the motion) puts before the state court the question of whether the proceeding will resolve the Hague claim. Ancillary to that question, the motion calls upon the court to re-examine the evidence on the record before it and determine if the evidence suffices to establish that: (1) Italy is the place of the children's habitual residence; (2) the father was exercising his custody rights under Italian law at the time of the alleged wrongful retention; and (3) the mother's retention of the children in the United States was wrongful. Finally, the motion requires the court to determine the appropriate relief under the circumstances – whether to enforce or to set aside the magistrate's grant of temporary custody to the mother and whether to order the children's return to Italy pursuant to the

11

Convention. Under principles of comity, the state court should have the opportunity to address these issues. *See Pennzoil*, 481 U.S. at 17 (finding that principles of comity required that the state court be given "an opportunity to adjudicate" the challenge to state law that was subsequently made in federal court).

The court's decision to abstain is consistent with pre-*Sprint* cases that invoked *Younger* when a Hague claim had been raised and addressed in state court, even if not resolved by way of final judgment. *See Cerit v. Cerit*, 188 F.Supp.2d 1239, 1247-48 (D. Haw. 2002) (abstaining under *Younger* where the federal petitioner had raised a Hague claim in state court and the state court was in the process of determining whether to grant Hague relief); *Witherspoon v. Orange Cnty. Dep't of Soc. Servs.*, 646 F.Supp.2d 1176, 1181 (C.D. Cal. 2009) (abstaining where the "state court has been litigating the ICARA issue since Ms. Witherspoon chose to raise it there"); *Grieve v. Tamerin*, No. 00-CV-3824 JG, 2000 WL 1240199, at **2-3 (E.D.N.Y. Aug. 25, 2000), *aff'd* on other grounds, 269 F.3d 149 (2d Cir. 2001) (same). To be clear, though, those cases relied solely on an analysis of the *Middlesex* conditions – an approach that no longer applies.

Once a court finds that one of the three exceptional circumstances identified in *NOPSI* is satisfied, it may consider the *Middlesex* conditions as "additional factors" before invoking *Younger*. *Sprint*, 134 S.Ct. at 593. Here, the first two factors – an ongoing state proceeding which implicates important state interests – are subsumed in the exceptional circumstances inquiry.[5] The third factor – an adequate opportunity in state court to raise the claim being asserted in federal court – is also satisfied, at least at the present time. *See Pennzoil*, 481 U.S. at 15 (absent "unambiguous authority to the contrary," state court proceedings are presumed adequate to present federal claims); *Kelm v.*

---

[5] Courts applying the *Middlesex* test commonly found that state courts had a strong interest in domestic relations. *See, e.g.*, *Kelm v. Hyatt*, 44 F.3d 419-20 (6th Cir. 1995) ("[T]raditional domestic relations issues qualify as important state issues under the second element of *Younger*."). Federal courts have used that reasoning in Hague cases to support their decisions to abstain. *See, e.g.*, *Cerit*, 188 F.Supp.2d at 1248; *Karl v. Cifuentes*, No. 15-2542, 2015 WL 4940613, at *5 (Aug. 13, 2015).

Although consideration of domestic relations as being an area of state concern does not cut against abstention, it is of dubious weight here. *Sprint* requires more than the existence of an important state interest; it requires an interest in the state court's ability to perform its judicial functions. Moreover, Hague petitions implicate federal interests. Congress granted jurisdiction over Hague petitions to both federal and state courts, and the Convention itself provides that it is "the custody determination, not the Hague Convention Petition, that should be held in abeyance if the proceedings are going forward in both state and federal courts." *Yang*, 416 F.3d at 203; *see* Hague Convention, art. 16. *See also Hazbun Escaf*, 191 F. Supp. 2d at 693 (noting that a Hague petition "implicates an important *federal* interest in foreign relations and the enforcement of United States treaty obligations") (emphasis in original).

12

*Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (federal courts "must presume that the state courts are able to protect the interests of the federal plaintiff"). Should the state court determine that the father's Hague claim will not be addressed in the state proceeding, petitioner may move this court to lift the stay.

      C.      The *Colorado River* Doctrine

For the first time in her reply brief, respondent argues that the court should abstain under the *Colorado River* doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Though the court need not address the late-raised argument, *see Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012), the doctrine contributes little to the resolution of the motion to stay. The *Colorado River* doctrine rests on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (internal quotation marks omitted). It applies when there are parallel actions in federal and state court, such that the two actions involve substantially the same parties litigating substantially the same issues. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 339-40 (6th Cir. 1998). Again, at the present time, this standard is satisfied, but if the state court declines to proceed on the Hague claim, then the doctrine would be inapplicable.

**V.**      **Conclusion**

For the reasons stated above, respondent's motion to stay pursuant to the *Younger* abstention doctrine (doc. 11) is GRANTED. Petitioner's motion to strike (doc. 14) respondent's reply brief for failure to comply with Federal Rule of Civil Procedure 5.2(a) (concerning the redaction of personal information) and for failure to comply with Southern District of Ohio Local Rule of Civil Procedure 7.2(a)(3) (concerning the length of memoranda) is GRANTED. Respondent's motion for leave to file a corrected reply brief (doc. 15) is GRANTED.

This action is STAYED pending further proceedings in the state court action. The parties shall promptly notify the court when the state court issues a ruling on the pending motion to set aside the magistrate's October 7, 2015 order.

                                                                                       s/ James L. Graham
                                                                                       JAMES L. GRAHAM
                                                                                       United States District Judge

DATE: February 9, 2016